UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MITSUI O.S.K. LINES, LTD.
                 Plaintiffs,

    -v-

SEAMASTER LOGISTICS, INC., ET AL
                 Defendants.

------------------------------------------------------------------X

12-mc-00275

ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JAN 1 8 2013

ALISON J. NATHAN, District Judge:

    The Court, sitting in Part One duty, received briefing in this matter seeking to quash a subpoena served by Plaintiff Mitsui O.S.K. Lines, Ltd. ("Mitsui") on non-party Allied World Assurance Co. (Europe) Ltd. ("AWAC") by non-party Toll Global Forwarding Holdings (USA), Inc. ("Toll"). Motions to quash a subpoena are entrusted to the sound discretion of the district court. *Am. Sav. Bank, FSB v. UBS PaineWebber, Inc. (In re Fitch, Inc.)*, 330 F.3d 104, 108 (2d Cir. 2003).

    The underlying Second Amended Complaint in this matter, filed in the United States District Court for the Northern District of California brings claims for unpaid freight charges under maritime law. (Wang Decl. Ex. 2 ¶ 1). In brief, the Second Amended Complaint alleges that Defendants Seamaster Logistics, Inc. ("Seamaster") and Summit Logistics International, Inc. ("Summit") owe Mitsui certain amounts that were not properly paid to Mitsui for the transportation of property. (Wang Decl. Ex. 2 ¶¶ 9-13). Another action by Mitsui against Seamaster and Summit alleges that Seamaster and Summit fraudulently induced Mitsui to pay for certain trucking invoices. (Opp. at 3).

    Mitsui has served a subpoena on non-party AWAC to produce documents relating to an

1

insurance policy, including the policy itself, documents concerning any notice of claims by the insured that relate to the litigations described above, and communications relating to the coverage of that policy. (Wang Decl. Ex. 4). According to the briefing provided, Toll entered into this insurance policy—a "Buyer-Side Warranty and Indemnity Insurance Policy"—with AWAC in connection with Toll's purchase of Summit and Seamaster. (Mot. at 1-2; Opp. at 3-4). The insurance policy is between Toll and AWAC and covers "representations and warranties made in a merger agreement whereby Toll Holdings acquired Summit and Seamaster's ultimate parent entity"; neither Summit nor Seamaster are insureds under the policy. (Mot. at 1-2; Opp. at 3; Reply at 4). However, the litigation between Mitsui, Seamaster, and Summit has apparently prompted Toll to file a notice of claim with AWAC on the insurance policy. (Opp. at 4; Cicala Decl. Ex. A at 56, Ex. B at 68-70).

Mitsui first argues that Toll has no standing to request the Court quash the subpoena, as it is a non-party and was not served with the subpoena. (Opp. at 6). The Court disagrees. Because Toll asserts a claim of privilege in the documents sought by Mitsui, it appears that Toll has standing to challenge the subpoena on those grounds. *See Estate of Ungar v. Palestinian Auth.*, 332 Fed. Appx. 643, 645 (2d Cir. May 12, 2009) ("Because Orascom was claiming a privilege regarding the material sought in the subpoena, it had standing to challenge the subpoena served on White & Case LLP."); *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) ("*In the absence of a claim of privilege* a party usually does not have standing to object to a subpoena directed to a non-party witness.") (emphasis added). However, Toll lacks standing to challenge the subpoena on relevance or burden grounds. *See US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2012 U.S. Dist. LEXIS 158448, at *5 (S.D.N.Y. Nov. 5, 2012) ("A party lacks standing to challenge, on grounds of relevance or burden, a subpoena served on a non-party.").

This outcome is sensible given that, because the subpoena has been served on AWAC and it is AWAC who will produce the documents at issue, Toll has no claim that it will feel the effects any burden imposed by the subpoena. Rather, Toll's personal "right or privilege" that relates to the documents requested by the subpoena is its claim of privilege. The same is true of Toll's objection that the subpoena is ambiguous and overbroad.

As to the merits of Toll's motion to quash, Toll has not met its burden of demonstrating privilege, for several reasons.[1] *See United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) ("The party asserting the privilege . . . bears the burden of establishing its essential elements."). Because AWAC is a third-party with whom Toll does not appear to have any facially privileged relationship, Toll relies on the common interest doctrine to argue that it has not waived any privilege that would apply to the relevant documents by sending them to AWAC. The common interest doctrine, also erroneously known as the common interest privilege or the joint defense privilege, is an exception to the general rule that the voluntary disclosure of privileged materials to a third party waives any applicable privilege. *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 284 F.R.D. 132, 139 (S.D.N.Y. 2012). Obtaining the protection of the common interest doctrine requires showing (1) a common legal, rather than commercial, interest and (2) that the exchange of the information was made in the course of formulating a common legal strategy, and that the parties understood the communication was in furtherance of the shared legal interest. *Id.* at 139-40; *see also SEC v. NIR Group, LLC*, 283 F.R.D. 127, 131-32 (E.D.N.Y. 2012). On the first point, "the nature of the interest must be identical, not similar, and be legal, not solely commercial" and the parties must have come to an agreement embodying a cooperative and common enterprise toward an identical legal strategy. *Fireman's Fund Ins. Co.*, 284 F.R.D. at 139.

---

[1] The Court notes Toll's privilege objection does not relate to Request No. 1 of the subpoena (Mot. at 5).

3

Toll has not demonstrated either of the elements required to invoke the common interest doctrine. First, Toll's theory of a common interest is that AWAC, like Toll, likely hopes that any judgment against Seamaster and Summit is as small as possible. (Reply at 5). This does not suggest a sufficient common legal interest. *See id.* at 141 ("Other than arguing that Arch Re 'follows the fortunes' (or, in this case, liabilities) as its reinsurer, Max has not asserted any arguments or provided any evidence that proves a "cooperative and common" legal enterprise with Arch Re, as is its burden."). Nor has Toll provided any indication that it has an agreement with AWAC to pursue any such common interest. On the second prong, there is no suggestion that the communication at issue regarding Toll's notice of claim or communications regarding the policy pertain to a common legal strategy being developed by AWAC and Toll. *See id.*; *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 216 (S.D.N.Y. 2009) (holding the common interest doctrine did not apply because "[t]here is similarly no indication of 'demonstrated cooperation in formulating a common legal strategy' between Mr. Schanfield and any of these individuals.").

Regardless, even were Toll entitled to the benefit of the common interest doctrine, Toll has not demonstrated that any documents it has shared with AWAC are subject to any privilege in the first instance. *Samad Bros. v. Bokara Rug Co.*, 2010 U.S. Dist. LEXIS 127848, at *6 (S.D.N.Y. Nov. 30, 2010) ("The proponent of the privilege may not assert blanket or categorical claims of privilege but must show that the privilege applies to each communication for which it is asserted." (quotation marks omitted)). The common interest doctrine does not provide for a privilege in itself; rather, it is an exception to the rules of waiver that apply when otherwise privileged information is shared with individuals who do not facially share in that privilege. *See Fireman's Fund Ins. Co.*, 284 F.R.D. at 139 ("The doctrine is not an independent source of

4

privilege or confidentiality so that [i]f a communication is not protected by the attorney-client privilege or the attorney work-product doctrine, the common interest doctrine does not apply." (quotation marks omitted, alteration in original)).

At most, Toll has made broad statements that its communications with AWAC "at this or a future time[ ] may include work product . . . and/or attorney-client privileged communications" (Mot. at 7) but has made no showing that any particular communications between Toll and AWAC are privileged, let alone that all such communications are privileged. *See Samad Bros.*, 2010 U.S. Dist. LEXIS 127848, at *8 ("The plaintiff's mere assertion that "[d]ocuments responsive to virtually all the requests would include communications with Samad's counsel created in preparation for and during this lawsuit, which are protected by the attorney work product doctrine," is not sufficient to sustain the movant's burden on the motion to quash a non-party witness subpoena . . . ."). The Court is not willing to assume that every document exchanged between Mitsui and AWAC is privileged, and Toll has made no showing that any of the responsive documents contain legal advice or were prepared in anticipation of litigation. *See Mejia*, 655 F.3d at 132 (elements of attorney-client privilege); *Samad Bros.*, 2010 U.S. Dist. LEXIS 127848, at *6 (elements of work product privilege).

Toll's motion to quash the subpoena served by Mitsui on AWAC is DENIED.

Dated: January 18, 2013
New York, New York

_____
ALISON J. NATHAN
United States District Judge

5